# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### JONESBORO DIVISION

TERESA VICK                                                                                    PLAINTIFF

v.                                        NO. 3:05CV00269 HDY

JO ANNE B. BARNHART,                                                          DEFENDANT
Commissioner of the Social
Security Administration

### MEMORANDUM OPINION AND ORDER

The record reflects that in May of 2003, plaintiff Teresa Vick ("Vick") filed an application for disability insurance benefits pursuant to Title II of the Social Security Act ("Act"). Her application was denied initially and upon reconsideration. She next requested, and received, a de novo administrative hearing before an Administrative Law Judge ("ALJ"). In August of 2005, the ALJ issued a ruling adverse to Vick. She then appealed that ruling to the Appeals Council. In November of 2005, the Appeals Council affirmed the ruling of the ALJ. That ruling therefore became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). In November of 2005, Vick commenced the proceeding at bar in which she challenged the final decision of the Commissioner.

The sole inquiry for the Court is whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  See Prosch v. Apfel, 201 F.3d 1010 (8th Cir. 2000).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusions."  See Id. at 1012.  The Court may not reverse the decision of the Commissioner merely because the evidence supports a different conclusion.  See Id.

In determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole, it is helpful to identify those findings.  The record reflects that the Commissioner made findings pursuant to the five step sequential evaluation process.[1]  At step one, the Commissioner found that Vick has "not engaged in substantial gainful activity since the onset date."  See Transcript at 18.  At step two, the Commissioner found that Vick has "mild degenerative joint disease of her knees[,] chest pain of non-cardiac origin[,] and anxiety disorder NOS (mild)."  See Id.  At step three, the Commissioner found the following:

> ... Vick has a severe impairment within the meaning of the Social Security Regulations.  The evidence in this case does not document the existence of any impairment or combination of impairments that meets or equals the level of severity for any impairment listed in Appendix 1 to Subpart P, Regulations No. 4.

---

[1]

The five steps involve determining the following: "(1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is, or is comparable to, a listed impairment; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work."  See Cox v. Barnhart, 345 F.3d 606, 608 n.1 (8th Cir. 2003).

See Transcript at 19.  At step four, the Commissioner was required to determine whether Vick retains the residual functional capacity to perform her past work.  With regard to her residual functional capacity, the Commissioner found as follows:

> [Vick] has the residual functional capacity to perform work-related activities except for work involving lifting more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Furthermore, it is my opinion [Vick] is capable of standing and/or walking with normal breaks for a total of about 6 hours in an 8-hour workday, and is capable of sitting with normal breaks for a total of about 6 hours in an 8-hour workday. ...  Mentally, remains able to perform work where interpersonal contact is incidental to the work performed; the complexity of tasks is learned and performed by rote, involves few variables and requires little independent judgment; the supervision required is simple, direct and concrete.  Basically, this constitutes unskilled work …

See Transcript at 27.[2]  The Commissioner thus found at step four that Vick's residual functional capacity was such that she is "unable to perform her past relevant work as [a] cashier/stocker, supply clerk, receiving clerk, and pharmacy cashier/clerk/stocker."  See Id.  At step five, the Commissioner specifically noted that "the burden of proof shifts to the Commissioner … to establish that there are substantial numbers of jobs existing in the national economy that [Vick] can perform with her particular limitations."  See Transcript at 26.  The Commissioner then found as follows:

---

[2]

In determining Vick's residual functional capacity, the Commissioner made note of Vick's mental impairment.  The Commissioner found that although the medical evidence supported Vick's assertion of an anxiety disorder, it did not result in "any significant limitation[] and is deemed to be severe but non-disabling in nature."  See Transcript at 26.

… One method by which this burden can be met is by utilization of the Medical-Vocational Guidelines found in Appendix 2 to Subpart P of Regulations No. 4.  By correlation of an individual's physical ability, age, education and work experience to the guidelines, a conclusion is directed as to whether work exists that [Vick] can perform.

[Vick] is 44 years old and she has an eleventh grade education.  [She] is limited to sedentary/unskilled work activity.

I find that [Vick's] residual functional capacity and vocational profile coincide with the criteria of Rule 201.18, which mandates a finding that there are substantial numbers of jobs existing in the national economy which [she] can perform considering her abilities and limitations.

See Id.  Because the Commissioner found that there are a substantial number of jobs existing in the national economy that Vick can perform given her abilities and limitations, the Commissioner concluded that Vick is not disabled within the meaning of the Act.

Are the Commissioner's findings supported by substantial evidence on the record as a whole?  Vick thinks not.  She maintains, inter alia, that her residual functional capacity was erroneously determined by the Commissioner.  For the reason that follows, the Court agrees.

Residual functional capacity is simply an assessment of "the most a person can do despite that person's limitations."  See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004).  The assessment is made using all of the relevant evidence in the record and must be supported by "medical evidence that addresses [the person's] ability to function in the workplace."  See Id. at 539.

-4-

As the Court noted above, the Commissioner found that Vick is capable of "standing and/or walking with normal breaks for a total of about 6 hours in an 8-hour workday and is capable of sitting with normal breaks for a total of about 6 hours in an 8-hour workday," and thus retains the residual functional capacity to perform "sedentary/unskilled work activity."  See Transcript at 27.[3]  The rationale for the foregoing findings is as follows:

> ... [Vick] was diagnosed with mild degenerative joint disease in her knees that could account for some degree of pain, but there is no clinical or laboratory evidence of any systemic arthritis process demonstrated to account for her allegations of severe arthritis in her hands, legs, and back."  In addition, she has never been evaluated by a rheumatologist or undergone blood diagnostic evaluation for rheumatoid profile to see if she has any systemic tendencies.  She does not exhibit signs of marked limitation of motion with gross anatomical deformity such as subluxation, contracture, bony or fibrous ankylosis, or instability supported by x-ray evidence of either significant joint space narrowing or significant bony destruction markedly limiting ability to walk or stand. ... Moreover, she remains able to perform rather robust activities of daily living such as doing the laundry, vacuuming, sweeping, grocery shopping, and taking out the trash. ...

See Transcript at 24.   The above rationale is based largely upon the findings and conclusions of Dr. Roland Hollis ("Hollis") and Dr. Rommel Childress ("Childress") but in contravention of those of Dr. Roger Cagle ("Cagle"), one of Vick's treating physicians.

---

[3]

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  See 20 C.F.R. 404.1567(a)

Hollis appears to have examined Vick on five separate occasions between January of 2003 and April of 2003.  A complaint of Vick's at each examination was the pain in her knees.  Hollis diagnosed Vick as suffering from osteoarthritis in her knees and prescribed a round of medication for her.  He noted in his report following a February of 2003 examination that she is to refrain from "prolonged standing."  See Transcript at 114.

Childress conducted a one-time consultative examination of Vick in June of 2005.  The results of his examination are contained in a one and one-half page written report and a two page checklist.  In the written report, he opined the following:

> … [Vick] has knee problems that may require some intervention in the way of MRI scans to evaluate the knees.  She has other joint aches, pain and symptoms that may be arthritic in nature and she may need a blood diagnostic evaluation for rheumatoid profile to see if she has any systemic tendencies, although clinically I see no evidence of any systemic arthritis, but just localized minor wear and tear, but she may need further work-up to rule out systemic process such as rheumatoid arthritis.  She would seem to be a good candidate for some type of vocational rehab.  Jobs that wouldn't require significant standing, climbing steps or walking which would certainly be difficult for her with her knees grinding as they are, but she may be a good vocational rehab patient to do something like sitting if her anxiety difficulty would not interfere with that.

See Transcript at 209.  In the checklist portion of Childress' report, he opined that Vick is capable of sitting, and standing/walking, for a total of five hours in an eight hour workday.  He additionally opined that she can only occasionally balance and stoop but can never climb, crouch, kneel, or crawl.  See Transcript at 211.

Cagle examined Vick on a number of occasions beginning sometime in 2003 and continuing through 2005.  In September of 2003, he opined that she suffers from, inter alia, severe rheumatoid arthritis and cannot be gainfully employed.  The majority of Cagle's examinations of Vick, though, occurred between January of 2004 and July of 2005.  In March of 2005, he completed an "Arthritis Residual Functional Capacity Questionnaire."  See Transcript at 156-159.  His findings and conclusions are enlightening for several reasons.  First, Cagle diagnosed Vick as suffering from, inter alia, fibromyalgia and arthritis.  Second, he indicated that she has pain in her knees and has a reduced range of motion in her knees.  Third, with regard to her functional limitations, he opined that she can walk no more than one city block without rest or severe pain, can neither stand nor sit for more than thirty to forty-five minutes continuously, and can neither stand nor sit for more than two hours total in an eight hour workday.  Last, he opined that she can rarely twist and can never stoop, crouch, or climb.

The Commissioner discredited Cagle's September of 2003 conclusion as to Vick's ability to be employed because the conclusion is "not well supported by medically acceptable clinical and laboratory diagnostic techniques, is inconsistent with other substantial evidence of record and seems to be based solely on the allegations made by … Vick …"  See Transcript at 20.  With regard to Cagle's subsequent examinations, the Commissioner noted that "no diagnostic work-up had been performed in terms of systemic arthritis when [Cagle] saw [Vick] in June of 2005."  See Id.

-7-

The Commissioner's findings as to Vick's residual functional capacity, specifically, her ability to "stand[] and/or walk[] with normal breaks for a total of about 6 hours in an 8-hour workday and … sit[] with normal breaks for a total of about 6 hours in an 8-hour workday," see Transcript at 27, are not supported by substantial evidence on the record as whole for the following reasons.  First, Hollis noted in his report following a February of 2003 examination of Vick that she is to refrain from "prolonged standing."  See Transcript at 114.  Second, Childress found that Vick is not a good candidate for "[j]obs that … require significant standing …"  See Transcript at 209.  It is not clear what Hollis and Childress intended by the phrases "prolonged standing" and "significant standing," but it is possible to construe the phrases to include jobs requiring standing and/or walking for six hours in an eight hour workday, jobs the Commissioner found that Vick is capable of performing.   Third, Childress found that Vick is capable of standing/walking and sitting for a total of only five hours in an eight hour workday, not the six hours found by the Commissioner.  Fourth, although the Commissioner could properly discredit Cagle's September of 2003 opinion that Vick cannot be gainfully employed because the opinion had little support in the record when offered, Cagle's subsequent findings and conclusions are entitled to some weight.  He found, as did Hollis and Childress, that Vick has significant problems with her knees and is severely restricted in the number of hours each day she can stand/walk and sit because of her knee problems.

In addition to the foregoing, it appears that the Commissioner failed to fully and fairly develop the record with regard to Vick's residual functional capacity, specifically, the extent of her knee problems.[4]   Childress opined that Vick's knee problems "may require some intervention in the way of MRI scans ..."   See Transcript at 209.   In the same report, he noted that she may need "further work-up to rule out systemic process such as rheumatoid arthritis."   See Transcript at 209.   The Commissioner, in concluding that Vick is not disabled within the meaning of the Act, discredited Cagle's findings and conclusions, in part, because "no diagnostic work-up had been performed in terms of systemic arthritis when [Cagle] saw [Vick] in June of 2005."   See Transcript at 20.   Given the questions concerning the extent of Vick's knee problems, the Commissioner was obligated to explore the possibility of ordering additional testing and work-ups.

Vick also maintains that the Commissioner's findings are not supported by substantial evidence on the record as a whole because of the Commissioner's use of the Medical-Vocational Guidelines ("Grids").   Vick maintains that the use of the Grids was improper because she has a severe non-exertional impairment.   She maintains that the Commissioner should have "produce[d] vocational expert testimony concerning the availability of jobs which a person with [Vick's] particular characteristics can perform." See Document 10 at 22.   For the reason that follows, the Court agrees.

---

[4]

The Commissioner has an obligation to fully and fairly develop the record.  See Battles v. Shalala, 36 F.3d 43 (8th Cir. 1994).

In Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005), the United States Court of Appeals for the Eighth Circuit provided the following guidance in the use of the Grids:

> The [Commissioner] may not rely on the [G]rids if [the claimant] suffers from non-exertional impairments, but instead must obtain the opinion of a vocational expert. [Citation omitted]. Non-exertional impairments that "do[ ] not diminish or significantly limit the claimant's residual functional capacity to perform the full range of Guideline-listed activities" do not prevent use of the [G]rids, however. [Citation omitted].

See also Baker v. Barnhart, 457 F.3d 882, 894 (8th Cir. 2006).[5]

The Commissioner found that Vick suffers from a non-exertional impairment, i.e., "anxiety disorder NOS (mild)." See Transcript at 18.[6] Although the Commissioner continually characterized the anxiety disorder as "mild," the Commissioner also characterized it as "severe but non-disabling in nature." See Transcript at 26. Notwithstanding the existence of Vick's non-exertional impairment, which was either mild or severe, the Commissioner used the Grids in concluding that Vick was not disabled within the meaning of the Act.

---

[5]

"Generally, where the claimant suffers from a nonexertional impairment such as pain, the [Commissioner] must obtain the opinion of a vocational expert instead of relying on the [Grids]. [Citation omitted]. However, the [Grids] still may be used where the nonexertional impairments do not diminish or significantly limit the claimant's residual functional capacity to perform the full range of Guideline-listed activities. [Citation omitted; internal quotations omitted].

[6]

The Court understands "NOS" to mean "not otherwise specified." It apparently refers to the fact that the specific type of Vick's anxiety disorder has not been identified.

Given the existence of Vick's non-exertional impairment, the Commissioner was obligated to obtain the opinion of a vocational expert unless the Commissioner found that Vick's anxiety disorder does not diminish or significantly limit her residual functional capacity to perform the full range of listed activities.  The Court has examined the record and can find nothing to suggest that the Commissioner made that finding. Specifically, the Court can find nothing to suggest that the Commissioner inquired into whether Vick's anxiety disorder diminishes or significantly limits her residual functional capacity to perform the full range of listed activities.  At most, the Commissioner made what appears to be conflicting findings as to the severity of Vick's anxiety disorder.  The Commissioner should be accorded the opportunity to clarify this confusion and to determine whether Vick's non-exertional impairment diminishes or significantly limits her residual functional capacity to perform the full range of listed activities.  If Vick's non-exertional impairment so diminishes or significantly limits her residual functional capacity, the Commissioner must obtain the opinion of a vocational expert.

The Court thus concludes that the Commissioner's findings are not supported by substantial evidence on the record as a whole.  The Commissioner failed to properly assess Vick's residual functional capacity, specifically, the extent to which she can stand/walk and sit during an eight hour workday.  The Commissioner is directed to more fully develop the record with regard to that issue.  The Commissioner shall also clarify the confusion as to the severity of Vick's non-exertional impairment and whether it

diminishes or significantly limits her residual functional capacity to perform the full range of listed activities.  If it so diminishes or significantly limits her residual functional capacity, the Commissioner must obtain the opinion of a vocational expert.   The Commissioner's decision is reversed and remanded.   This remand is a "sentence four" remand as that phrase is defined  in 42 U.S.C. 405(g) and <u>Melkonyan v. Sullivan</u>, 501 U.S. 89 (1991).

IT IS SO ORDERED this ___10___ day of October, 2006.


_____
UNITED STATES MAGISTRATE JUDGE